KEKER, VAN NEST & PETERS LLP
ERIN E. MEYER - # 274244
emeyer@keker.com
JONHATAN A. ARAGON - # 338756
jaragon@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Petitioner Paula Sofia Ramirez Clavijo

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| Paula Sofia Ramirez Clavijo,<br><br>Petitioner,<br><br>v.<br><br>POLLY KAISER, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security, PAMELA BONDI, Attorney General of the United States, acting in their official capacities,<br><br>Respondents. | Case No. 3:25-cv-06248<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Date Filed:  July 25, 2025 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...........................................................................................................1

II.   BACKGROUND ...........................................................................................................2

III.  ARGUMENT .................................................................................................................6

    A.    Petitioner is Likely to Succeed on the Merits. ........................................................7

        1.    Petitioner's detention violates substantive due process because she is neither a flight risk nor a danger to the community. ...............................7

        2.    The government violated procedural due process by depriving Petitioner of the opportunity to contest her arrest and detention before a neutral decisionmaker. ...................................................................9

    B.    Petitioner Will Continue to Suffer Serious and Irreparable Injury Absent a TRO.........................................................................................................................13

    C.    The Balance of the Equities and the Public Interest Weigh Strongly in Petitioner's Favor. .................................................................................................13

IV.   SECURITY ..................................................................................................................14

V.    CONCLUSION.............................................................................................................14

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A.E. v. Andrews,*
  No. 1:25-cv-00107, 2025 WL 1424382 (E.D. Cal. May 16, 2025) ................................10, 11

*All. for the Wild Rockies v. Cottrell,*
  632 F.3d 1127 (9th Cir. 2011) ...................................................................................6, 7, 12

*Baca v. Moreno Valley Unified Sch. Dist.,*
  936 F. Supp. 719 (C.D. Cal. 1996) ...............................................................................14

*Bent v. Barr,*
  445 F. Supp. 3d 408 (N.D. Cal. 2020) ..........................................................................13

*Cnty. of Sacramento v. Lewis,*
  523 U.S. 833 (1998) .........................................................................................................7

*Demore v. Kim,*
  538 U.S. 510 (2003) .........................................................................................................8

*Diaz v. Kaiser,*
  No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025) ...................11, 12, 14

*Diep v. Wofford,*
  No. 1:24-cv-01238, 2025 WL 6047444 (E.D. Cal. Feb. 25, 2025) .......................10

*Doe v. Becerra,*
  No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664 (E.D. Cal. Mar. 3, 2025) ...............11, 12

*Doe v. Noem,*
  __ F. Supp. 3d __, 2025 WL 1141279 (W.D. Wash. Apr. 17, 2025) ....................12

*Env't Prot. Info. Ctr. v. Carlson,*
  968 F.3d 985 (9th Cir. 2020) .........................................................................................13

*Gagnon v. Scarpelli,*
  411 U.S. 778 (1973) .........................................................................................................9

*Garcia v. Bondi,*
  No. 3:25-CV-05070, 2025 WL 1676855 (N.D. Cal. June 14, 2025) ...................12

*Hernandez v. Sessions,*
  872 F.3d 976 (9th Cir. 2017) .................................................................................. *passim*

*Hurd v. D.C., Gov't,*
  864 F.3d 671 (D.C. Cir. 2017) .........................................................................................9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

*Index Newspapers LLC v. U.S. Marshals Serv.*,
  977 F.3d 817 (9th Cir. 2020) ................................................................14

*Jackson v. Indiana*,
  406 U.S. 715 (1972)..............................................................................7

*Johnson v. Ryan*,
  55 F.4th 1167 (9th Cir. 2022) ..............................................................10

*Jones v. Blanas*,
  393 F.3d 918 (9th Cir. 2004) ................................................................10

*Jorge M. F. v. Wilkinson*,
  No. 21-CV-01434-JST, 2021 WL 783561 (N.D. Cal. Mar. 1, 2021) .....................12

*Jorgensen v. Cassiday*,
  320 F.3d 906 (9th Cir. 2003) ................................................................14

*Mahdawi v. Trump*,
  No. 2:25-CV-389, 2025 WL 1243135 (D. Vt. Apr. 30, 2025) .................................7

*Martinez v. Clark*,
  124 F.4th 775 (9th Cir. 2024) ..............................................................11

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)..............................................................................10

*Morrissey v. Brewer*,
  408 U.S. 471 (1972)..........................................................................9, 10

*Nielsen v. Preap*,
  586 U.S. 392 (2019)..............................................................................8

*Nozzi v. Hous. Auth. of City of Los Angeles*,
  806 F.3d 1178 (9th Cir. 2015) ..............................................................10

*Ortega v. Bonnar*,
  415 F. Supp. 3d 963 (N.D. Cal. 2019) ..........................................9, 10, 12

*Padilla v. U.S. Immigr. and Customs Enf't*,
  704 F. Supp. 3d 1163 (W.D. Wash. 2023)..............................................9

*Romero v. Kaiser*,
  No. 22-CV-02508-TSH, 2022 WL 1443250 (N.D. Cal. May 6, 2022) ...................12

*Rosales-Mireles v. United States*,
  585 U.S. 129 (2018)..............................................................................13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

*Saravia v. Sessions*,
    280 F. Supp. 3d 1168 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018) ................................................................8

*Singh v. Holder*,
    638 F.3d 1196 (9th Cir. 2011) ....................................................................11

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
    240 F.3d 832 (9th Cir. 2001) ........................................................................6

*Valdez v. Joyce*,
    No. 25 CIV. 4627 (GBD), 2025 WL 1707737 (S.D.N.Y. June 18, 2025) ............12

*People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*,
    766 F.2d 1319 (9th Cir.), *amended*, 775 F.2d 998 (9th Cir. 1985) ...................14

*Vargas v. Jennings*,
    No. 20-CV-5785-PJH, 2020 WL 5074312 (N.D. Cal. Aug. 23, 2020) ...............12

*Warsoldier v. Woodford*,
    418 F.3d 989 (9th Cir. 2005) ......................................................................13

*Wolff v. McDonnell*,
    418 U.S. 539 (1974) ....................................................................................7

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ..............................................................................2, 7, 9

*Zinermon v. Burch*,
    494 U.S. 113 (1990) ....................................................................................9

**Federal Statutes**

Immigration and Nationality Act § 240 ............................................................11

**Regulations**

8 C.F.R. § 239.2 ............................................................................................5

**Other Authorities**

Arelis R. Hernández & Maria Sacchetti, *Immigrant Arrests at Courthouses Signal New Tactic in Trump's Deportation Push*, Wash. Post, May 23, 2025 .................5

Hamed Aleaziz, Luis Ferré-Sadurní, & Miriam Jordan, *How ICE is Seeking to Ramp Up Deportations Through Courthouse Arrests*, N.Y. Times, May 30, 2025 (updated June 1, 2025) .........................................................................5

Margaret Kadifia, *Immigrants Fearful as ICE Nabs at Least 15 in S.F., Including Toddler*, Mission Local, June 5, 2025 ..............................................................5

iv

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

Sarah Ravani, *ICE Arrests Two More at S.F. Immigration Court, Advocates Say*, S.F. Chron., June 12, 2025 ................................................................................................5

Tomoki Chien, *Undercover ICE Agents Begin Making Arrests at SF Immigration Court*, S.F. Standard, May 27, 2025 ........................................................................5

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

## I.      INTRODUCTION

Petitioner Paula Sofia Ramirez Clavijo went to the San Francisco Immigration Court on July 24, 2025, expecting a routine master calendar hearing in which she would discuss her case with the immigration judge and schedule further proceedings on her pending asylum application. So she was surprised when, during the hearing, Immigration Judge Patrick O'Brien of the San Francisco Immigration Court informed her that the Department of Homeland Security ("DHS") lawyer was seeking dismiss her case in order to place her into expedited removal proceedings. Petitioner, unrepresented by counsel, orally opposed DHS's motion. The Immigration Judge did not grant the motion to dismiss. Instead, the judge gave Petitioner time to respond and set a further hearing for August 21, 2025, ominously adding that he hoped to see her again, but given the government's position, "it would be unlikely." Indeed, minutes after Petitioner exited the courtroom, a group of roughly four DHS agents arrested her before she could leave the courthouse. The agents did not verify Petitioner's identity, present her with a warrant, or tell Petitioner why they were arresting her.

Nothing about Petitioner's immigration case justified this arrest and detention. When Petitioner first entered the country in December of 2023, federal immigration officers released her within days on her own recognizance and with no ankle shackle or intrusive supervision conditions. The government thus necessarily determined that she did not pose a flight risk or danger to the community—let alone one warranting detention. Since then, Petitioner has had exemplary conduct and has done everything required of her by the government, including filing her asylum application, notifying the government of her current address, and appearing for her first and only court hearing on July 24, 2025. She has never been arrested and has no criminal history—anywhere in the world.

None of this mattered to the government. Rather than determining that Petitioner posed a flight risk or danger to the community, federal immigration agents arrested her pursuant to a new, sweeping, and unlawful policy targeting people for arrest at immigration courthouses for the purpose of placing them in expedited-removal proceedings. This enforcement campaign is specifically intended to increase ICE arrest numbers to satisfy internal agency quotas.

1
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

Petitioner's summary arrest and indefinite detention flout the Constitution. The only legitimate interests that civil immigration detention serves are mitigating flight risk and preventing danger to the community. When those interests are absent, the Fifth Amendment's Due Process Clause squarely prohibits detention. Additionally, by summarily arresting and detaining Petitioner without making any affirmative showing of changed circumstances, the government violated Petitioner's procedural due process rights. At the very least, she was constitutionally entitled to a hearing before a neutral decisionmaker at which the government should have justified her detention.

As a result of her arrest and detention, Petitioner is suffering irreparable and ongoing harm. The unconstitutional deprivation of "physical liberty" "unquestionably constitutes irreparable injury." *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017). Indeed, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner also faces numerous additional irreparable harms due to her detention, including acute medical dangers detailed below and in the attached declarations and separation from her community.

In light of this irreparable harm, and because she is likely to succeed on the merits of her due process claims, Petitioner respectfully requests that this Court issue a temporary restraining order ("TRO") immediately releasing her from custody and enjoining the government from re-arresting her absent the opportunity to contest that arrest at a hearing before a neutral decision maker. To maintain this Court's jurisdiction, the Court should also prohibit the government from transferring Petitioner out of this District and removing her from the country until these proceedings have concluded.

## II.    BACKGROUND

Petitioner Ramirez Clavijo is a 33-year-old asylum seeker who fled persecution in Colombia. Petitioner's Habeas Petition ("Pet.") ¶ 1. Petitioner was briefly detained by federal agents after entering the United States. Declaration of Fredy Javier Ramirez Clavijo ("Ramirez Clavijo Decl.") ¶ 3. Determining that she was not a flight risk or a danger to the community, the

2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

agents released Petitioner on her own recognizance with a notice to appear for removal proceedings in immigration court. *Id.*

Petitioner has lived in California for nearly two years. Ramirez Clavijo Decl. ¶ 4.

In February 2025, Petitioner applied for asylum, withholding of removal, and relief under the Convention Against Torture. *Id.* ¶ 6. Petitioner has no criminal record and has meticulously complied with all the requirements that the government has imposed on her. *Id.* ¶ 5. She filed her application for protection from removal and appeared for her one and only court hearing on July 24, 2025, Ramirez Clavijo ¶¶ 6-7. Petitioner was never required to be on an ankle monitor or any other form of intensive supervision. Ramirez Clavijo Decl. ¶ 5.

On July 24, 2025, as the government told her to do, Petitioner went to San Francisco Immigration Court for a routine hearing before Immigration Judge ("IJ") Patrick O'Brien. Declaration of Jonhatan Aragon ("Aragon Decl.") ¶ 3. Petitioner's name was called at the very end of the calendar, and the IJ asked her to come forward along with another woman she did not know. Petitioner and the other woman were the only two respondents remaining in the courtroom. *Id.* IJ O'Brien informed Petitioner (along with the other individual) that the government had moved to dismiss her case. IJ O'Brien stated that the government sought to dismiss her case in order to initiate fast-track "expedited removal" proceedings. *Id.* ¶ 4. IJ O'Brien did not grant the motion to dismiss. Instead, the judge gave Petitioner time to respond and set a further hearing for August 21, 2025, ominously adding that he hoped to see her again, but given the government's position, "it would be unlikely." *Id.* ¶¶ 4-5.

Indeed, immediately upon exiting the courtroom, a group of roughly four DHS agents, arrested Petitioner before she could leave the courthouse. Aragon Decl. ¶ 6. They did not verify Petitioner's identity, present a warrant, or tell Petitioner why they were arresting her. *Id.*

The agents took Petitioner to the San Francisco ICE office, located on a different floor of the same building at 630 Sansome Street in San Francisco, California. *Id.* Petitioner quickly texted her brother to tell him she was being detained before the agents confiscated her phone and turned it off. Ramirez Clavijo Decl. ¶ 7. Petitioner's brother contacted counsel at Keker, Van Nest, & Peters LLP, who began assisting the family. Ramirez Clavijo Decl. ¶ 8; Declaration of

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

Erin E. Meyer ("Meyer Decl.") ¶¶ 3-4. Meanwhile, at approximately 5:45 p.m., attorney Jessica Yamane Moraga of Pangea Legal Services was able to speak to Petitioner, and obtained consent to represent her pro bono in connection with a release request before ICE. Meyer Decl. ¶ 6. Ms. Yamane Moraga filed by email a Notice of Entry of Appearance before ICE along with a request for Petitioner's immediate release. *Id.* ICE has not responded to or acknowledged that request.

At approximately 8:30 a.m. on July 25, 2025, counsel from Keker, Van Nest & Peters was able to meet with Petitioner at 630 Sansome Street, San Francisco, California, in order to obtain consent to represent her pro bono in connection with the underlying habeas petition and related motions.  Aragon Decl. ¶ 7. Petitioner has serious medical conditions that have been exacerbated by her arrest and detention, described in detail below. At 11:54 a.m. on July 25, 2025, counsel for Petitioner from Keker, Van Nest & Peters sent a follow-up email to ICE attaching the newly-filed habeas petition, requesting that Petitioner not be transferred out of the Northern District of California. Meyer Decl. ¶ 10. At the time the habeas petition was filed, Petitioner was in Respondents' physical custody in this District. *See generally* Aragon Decl. ¶ 7 (detailing contact with Petitioner at the ICE office in San Francisco until roughly 9:30 a.m. on July 25, 2025). However, while Counsel for Petitioner was in the building at 630 Sansome Street, ICE agents indicated their intent to transfer Petitioner to another detention facility in the near future. *Id.* ¶ 8.

At 10:33 a.m. on July 25, 2025, Counsel for Petitioner left a voicemail with the Civil Chief of the U.S. Attorney's Office for the Northern District of California. Meyer Decl. ¶ 11. Counsel informed the Civil Chief that the habeas petition would be filed imminently.  The Civil Chief responded via phone call at approximately 11:22 a.m., and Counsel for Petitioner explained the bases for the Petition as well as the forthcoming motion for TRO. Counsel for Petitioner answered all questions from the Civil Chief regarding Petitioner's identity and the circumstances of her arrest. *Id.* ¶ 12. Counsel for Petitioner followed up by email attaching a copy of the habeas petition and indicating that a Motion for TRO would be forthcoming. *Id.*  Counsel later provided a copy of the petition by email to the Civil Chief. *Id.* ¶ 13.

This arrest is part of a new, nationwide DHS strategy of sweeping up people who attend their immigration court hearings, detaining them, and unlawfully seeking to re-route them to fast-

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

track deportations. Pet. ¶ 4. Since mid-May, DHS has implemented a coordinated practice of leveraging immigration detention to strip people like Petitioner of their substantive and procedural rights and pressure them into deportation. *Id.* DHS is aggressively pursuing this arrest and detention campaign at courthouses throughout the country, including Northern California. Pet. ¶¶ 37-49. At the San Francisco Immigration Court, where Petitioner was arrested, dozens of people have been arrested in the last three months after attending their routine immigration hearings.[1] Pet. ¶ 48.

Immigration detention is civil, and thus is permissible for only two reasons: to ensure a noncitizen's appearance at immigration hearings and to prevent danger to the community. But DHS did not arrest and detain Petitioner—who demonstrably poses no risk of absconding from immigration proceedings or danger to the community—for either of these reasons. Instead, as part of its broader enforcement campaign, DHS detained Petitioner to strip her of her procedural rights, force her to forfeit her application for relief, and pressure her into fast-track removal.

This "coordinated operation" is "aimed at dramatically accelerating deportations" by arresting people at the courthouse and placing them into expedited removal.[2] Pet. ¶ 41. The first step of the operation typically takes place inside the immigration court. Pet. ¶ 42. When people arrive in court for their master calendar hearings, DHS attorneys orally file a motion to dismiss the proceedings—without any notice to the affected individual. *Id.* Although DHS regulations do not permit such motions to dismiss absent a showing that the "[c]ircumstances of the case have changed," 8 C.F.R. § 239.2(a)(7), (c), DHS attorneys are not conducting any case-specific

---

[1] Sarah Ravani, *ICE Arrests Two More at S.F. Immigration Court, Advocates Say*, S.F. Chron., June 12, 2025, https://www.sfchronicle.com/bayarea/article/sf-immigration-court-arrests-20374755.php; Margaret Kadifia, *Immigrants Fearful as ICE Nabs at Least 15 in S.F., Including Toddler*, Mission Local, June 5, 2025, https://missionlocal.org/2025/06/ice-arrest-san-francisco-toddler/; Tomoki Chien, *Undercover ICE Agents Begin Making Arrests at SF Immigration Court*, S.F. Standard, May 27, 2025, https://sfstandard.com/2025/05/27/undercover-ice-agents-make-arrests-san-francisco-court/.

[2] Arelis R. Hernández & Maria Sacchetti, *Immigrant Arrests at Courthouses Signal New Tactic in Trump's Deportation Push*, Wash. Post, May 23, 2025, https://www.washingtonpost.com/immigration/2025/05/23/immigration-court-arrests-ice-trump; *see also* Hamed Aleaziz, Luis Ferré-Sadurní, & Miriam Jordan, *How ICE is Seeking to Ramp Up Deportations Through Courthouse Arrests*, N.Y. Times, May 30, 2025, https://www.nytimes.com/2025/05/30/us/politics/ice-courthouse-arrests.html (updated June 1, 2025).

analysis of changed circumstances before filing these motions to dismiss. Pet. ¶ 42.

The next step takes place outside the courtroom. Pet. ¶ 45. ICE officers, in consultation with DHS attorneys and officials, station themselves in courthouse waiting rooms, hallways, and elevator banks. *Id.* When an individual exits their immigration hearing, ICE officers—typically masked and in plainclothes—immediately arrest the person and detain them. *Id.* The officers execute these arrests regardless of how the IJ rules on the government's motion to dismiss. *Id.* Once the person is detained, DHS attorneys often unilaterally transfer venue to a "detained" immigration court where they renew their motion to dismiss and seek to place individuals in expedited removal. Pet. ¶ 46.

Petitioner will suffer serious and ongoing harm every day she remains in detention. Petitioner is a survivor of sexual assault and suffers from serious anxiety and depression. Ramirez Clavijo Decl. ¶ 9. The stress caused by Petitioner's anxiety and depression have led her to develop alopecia, a medical condition that results in widespread hair loss. She wears a wig in order to manage the anxiety that is further caused by her alopecia, and that anxiety has been heightened by ICE's indication that her wig will be taken away in detention. Aragon Decl. ¶ 9. Her arrest and subsequent detention have substantially exacerbated these conditions, and Petitioner is serious distress. Aragon Decl. ¶ 10.

Prior to her detention, Petitioner lived with her brother in the Sunnyvale area, and has worked to build a life in the San Francisco Bay Area. Ramirez Clavijo Decl. ¶ 4. She has filed a petition for asylum, withholding of removal, protection under the Convention Against Torture, and has not had any issues since entering the country. *Id.* ¶ 6. Petitioner has no criminal history anywhere in the world. *Id.* ¶ 5.

## III.    ARGUMENT

To warrant a TRO, a movant must show (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [their] favor," and that (4) "an injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

F.3d 832, 839 n.7 (9th Cir. 2001) (noting the analysis for issuing a temporary restraining order and a preliminary injunction is substantially the same). Even if the movant raises only "serious questions" as to the merits of their claims, the court can grant relief if the balance of hardships tips "sharply" in their favor. *All. for the Wild Rockies*, 632 F.3d at 1135. All factors here weigh decisively in Petitioner's favor.

        **A.**      **Petitioner is Likely to Succeed on the Merits.**

              **1.**      **Petitioner's detention violates substantive due process because she is neither a flight risk nor a danger to the community.**

        The Due Process Clause applies to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "The touchstone of due process is protection of the individual against arbitrary action of government," *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974), including "the exercise of power without any reasonable justification in the service of a legitimate government objective," *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

        To comply with substantive due process, the government's deprivation of an individual's liberty must be justified by a sufficient purpose. Therefore, immigration detention, which is "civil, not criminal," and "nonpunitive in purpose and effect," must be justified by either (1) dangerousness or (2) flight risk. *Zadvydas*, 533 U.S. at 690; *see Hernandez*, 872 F.3d at 994 ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). When these rationales are absent, immigration detention serves no legitimate government purpose and becomes impermissibly punitive, violating a person's substantive due process rights. *See Jackson v. Indiana*, 406 U.S. 715, 738 (1972) (detention must have a "reasonable relation" to the government's interests in preventing flight and danger); *see also Mahdawi v. Trump*, No. 2:25-CV-389, 2025 WL 1243135, at *11 (D. Vt. Apr. 30, 2025) (ordering release from custody after

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

1  finding petitioner may "succeed on his Fifth Amendment claim if he demonstrates either that the

2  government acted with a punitive purpose or that it lacks any legitimate reason to detain him").

3      The Supreme Court has recognized that noncitizens may bring as-applied challenges to

4  detention, including so-called "mandatory" detention. *Demore v. Kim*, 538 U.S. 510, 532-33

5  (2003) (Kennedy, J., concurring) ("Were there to be an unreasonable delay by the INS in

6  pursuing and completing deportation proceedings, it could become necessary then to inquire

7  whether the detention is not to facilitate deportation, or to protect against risk of flight or

8  dangerousness, but to incarcerate for other reasons."); *Nielsen v. Preap*, 586 U.S. 392, 420 (2019)

9  ("Our decision today on the meaning of [§ 1226(c)] does not foreclose as-applied challenges—

10  that is, constitutional challenges to applications of the statute as we have now read it.").

11      Petitioner, who has no criminal record and who is diligently pursuing her immigration

12  case, is neither a danger nor a flight risk. Therefore, her detention is both punitive and not

13  justified by a legitimate purpose, violating her substantive due process rights. Indeed, when

14  Respondents chose to release Petitioner from custody in 2023, that decision represented their

15  finding that she was neither dangerous nor a flight risk. *See Saravia v. Sessions*, 280 F. Supp. 3d

16  1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir.

17  2018) ("Release reflects a determination by the government that the noncitizen is not a danger to

18  the community or a flight risk."). Nothing has transpired since to disturb that finding.

19      *First*, because Petitioner had no criminal history, and has had no intervening criminal

20  history or arrests since her release, Ramirez Clavijo Decl. ¶ 5, there is no credible argument that

21  she is a danger to the community.

22      *Second*, as to flight risk, the question is whether custody is reasonably necessary to secure

23  a person's appearance at immigration court hearings and related check-ins. *See Hernandez*, 872

24  F.3d at 990-91. There is no basis to argue that Petitioner, who was arrested by Respondents while

25  appearing in immigration court for a master calendar hearing, is a flight risk. To the contrary,

26  Petitioner diligently appeared at the only court hearing she was ordered to, and she timely

27  updated Respondents when she moved to a new address. Ramirez Clavijo Decl. ¶¶ 5, 7.

28  Moreover, Petitioner has a viable path toward immigration relief and a pathway to lawful

8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

permanent residence, further mitigating any risk of flight. See Meyer Decl. ¶ 5; *see also Padilla v. U.S. Immigr. and Customs Enf't*, 704 F. Supp. 3d 1163, 1173 (W.D. Wash. 2023) (holding that there is not a legitimate concern of flight risk where plaintiffs have bona fide asylum claims and desire to remain in the United States). Months prior to her arrest, Petitioner filed her application for asylum. Meyer Decl. ¶ 5. She has every intention of continuing to pursue this application.

In sum, Petitioner's actions since Respondents first released her confirm that she is neither a danger nor flight risk. Indeed, her ongoing compliance and community ties compel the conclusion that she is even less of a danger or flight risk than when she was originally released. Accordingly, Petitioner's ongoing detention is unconstitutional, and substantive due process principles require her immediate release.

**2.    The government violated procedural due process by depriving Petitioner of the opportunity to contest her arrest and detention before a neutral decisionmaker.**

Noncitizens living in the United States like Petitioner have a protected liberty interest in their ongoing freedom from confinement. *See Zadvydas*, 533 U.S. at 690. The Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). This is so even in cases where that freedom is lawfully revocable. *See Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017) (citing *Young v. Harper*, 520 U.S. 143, 152 (1997) (holding that re-detention after pre-parole conditional supervision requires pre-deprivation hearing)); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (holding the same, in probation context); *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (same, in parole context).

Accordingly, the Supreme Court has repeatedly held that individuals released from custody on bond, parole, or other forms of conditional release have a protected interest in their ongoing liberty, because "[t]he parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. "By whatever name, the[ir] liberty is valuable and must be seen within the protection of the [Due Process Clause]." *Id.* This liberty interest also applies to noncitizens, including those who have been conditionally released from immigration custody. *See Ortega v. Bonnar*, 415 F. Supp. 3d

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

963, 970 (N.D. Cal. 2019). Petitioner thus has a protected liberty interest in her freedom from physical custody.

Once a petitioner has established a protected liberty interest, as Petitioner has done here, courts in this circuit apply the *Mathews* test to determine what procedural protections are due. *See Johnson v. Ryan*, 55 F.4th 1167, 1179-80 (9th Cir. 2022) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Under that test, the court weighs: (1) the private interest affected; (2) the risk of erroneous deprivation and probable value of procedural safeguards; and (3) the government's interest. *Id.* In this case, the factors weigh heavily in favor of releasing Petitioner and prohibiting her re-detention without a custody hearing at which the government bears the burden of proof.

*First*, the private interest affected in this case is profound. When considering this factor, courts look to "the degree of potential deprivation." *Nozzi v. Hous. Auth. of City of Los Angeles*, 806 F.3d 1178, 1193 (9th Cir. 2015) (citing *Mathews*, 424 U.S. at 341). The degree of deprivation here is high. Petitioner, who has serious medical conditions (which have been exacerbated by her arrest and detention) has been completely deprived of her physical liberty under threat of being imminently moved to an undisclosed location. Petitioner's detention has ripped from her the "free[dom] to be with family and friends and to form the . . . enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. Cutting someone off from the "core values of unqualified liberty"—for Petitioner, the ability to monitor and care for her medical needs, wake up in her own home, and to be with her family members—creates a "grievous loss." *Id.* Moreover, because Petitioner faces civil detention, "[her] liberty interest is arguably greater than the interest of the parolees in *Morrissey*." *See Ortega*, 415 F. Supp. 3d at 970. As someone in civil detention, therefore, "it stands to reason that [Petitioner] is entitled to protections at least as great as those afforded to a[n] . . . individual . . . accused but not convicted of a crime." *See Jones v. Blanas*, 393 F.3d 918, 932 (9th Cir. 2004).

*Second*, "the risk of an erroneous deprivation [of liberty] is high" where, as here, "[the petitioner] has not received any bond or custody redetermination hearing." *A.E. v. Andrews*, No. 1:25-cv-00107, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) (quoting *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020)); *see also Diep v. Wofford*,

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

No. 1:24-cv-01238, 2025 WL 6047444, at *5 (E.D. Cal. Feb. 25, 2025). Respondents grabbed Petitioner by surprise as she left her immigration court hearing, detaining her with no notice and no opportunity to contest her re-detention before a neutral arbiter. In such circumstances, when Respondents have provided no procedural safeguards, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *A.E.*, 2025 WL 1424382, at *5. This is especially true here, where there is no change in Petitioner's circumstances suggesting that Petitioner now poses a flight risk or danger to the community. Her re-detention instead appears to be motivated instead by Respondents' new arrest quotas and practice of leveraging detention to secure dismissal of ongoing proceedings under Section 240 of the Immigration and Nationality Act, to initiate expedited removal. Pet. ¶ 70. Neither constitutes a lawful justification to re-detain a person who does not pose a flight risk or danger to the community.

Because the private interest in freedom from immigration detention is substantial, due process also requires that in cases like this one, the government bears the burden of proving "by clear and convincing evidence that the [noncitizen] is a flight risk or danger to the community." *Singh v. Holder*, 638 F.3d 1196, 1203-04 (9th Cir. 2011); *see Martinez v. Clark*, 124 F.4th 775, 785-86 (9th Cir. 2024) (holding that government properly bore burden by clear and convincing evidence in court-ordered bond hearing); *Doe v. Becerra*, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *8 (E.D. Cal. Mar. 3, 2025) (ordering pre-deprivation bond hearing in which government bears burden by clear and convincing evidence).

*Third*, the government's interest in detaining Petitioner without first providing notice and submitting to a custody hearing is minimal. Immigration courts routinely conduct custody hearings, which impose a "minimal" cost to the government. *See Doe*, 2025 WL 691664, at *6; *A.E.*, 2025 WL 1424382, at *5. Petitioner has shown that she is committed to attending her immigration proceedings, and she has strong community ties in the Bay Area; there is no reason to believe that between the date of her release and the custody hearing she requests, her compliance will change or she will flee. Indeed, courts regularly hold that the government's interest in re-detention without a custody hearing is low when the petitioner "has long complied with [her] reporting requirements." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

*3-*4 (N.D. Cal. June 14, 2025) (granting TRO prohibiting re-detention of noncitizen without a pre-deprivation bond hearing); *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3-*4 (N.D. Cal. Mar. 1, 2021) (same); *Ortega*, 415 F. Supp. 3d at 970 (granting habeas petition ordering the same); *see also Valdez v. Joyce*, No. 25 CIV. 4627 (GBD), 2025 WL 1707737, at *4-*5 (S.D.N.Y. June 18, 2025) (granting habeas petition and immediately releasing petitioner who had been detained without process, who had "voluntarily attended his scheduled immigration court proceedings" and "established ties" through his work and volunteering with the church).

In similar cases, courts in this Circuit regularly hold that re-detaining noncitizens without a pre-deprivation hearing in which the government bears the burden of proof violates due process, and issue TROs granting petitioners the emergency relief Petitioner seeks here. *See Doe*, 2025 WL 691664, at *8 (granting TRO over one month after petitioner's initial detention); *see also, e.g., Diaz*, 2025 WL 1676854, at *3-*4; *Garcia v. Bondi*, No. 3:25-CV-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025); Jorge M. F., 2021 WL 783561, at *4; *Romero v. Kaiser*, No. 22-CV-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).

In short, Respondents violated Petitioner's due process rights when they detained her without notice and without a custody hearing before a neutral arbiter. Here, only an order releasing Petitioner and enjoining re-detention—unless Respondents provide Petitioner with a custody hearing where the government bears the burden of proof—would return the parties to the "last uncontested status which preceded the pending controversy." *Doe v. Noem*, __ F. Supp. 3d __, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)); *see also Valdez*, 2025 WL 1707737, at *4-*5 (ordering petitioner's immediate release as remedy for procedural due process violation).

For the foregoing reasons, Petitioner is likely to succeed on the merits of her claims. But even if the Court disagrees, she presents at least "serious question[s] going to the merits," alongside a "balance of hardships" tipping decidedly in her favor. *All. for the Wild Rockies*, 632 F.3d at 1135. Indeed, the constitutional concerns delineated above are of the weightiest order and

12

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

beyond colorable. This Court should therefore enter the requested TRO.

### B. Petitioner Will Continue to Suffer Serious and Irreparable Injury Absent a TRO.

Without a temporary restraining order, Petitioner will suffer immense irreparable injury. Indeed, she faces such injury every hour she remains in detention in violation of her Fifth Amendment rights. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994-95 (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (internal quotation marks omitted). And the unlawful deprivation of physical liberty is the quintessential irreparable harm. *See Hernandez*, 872 F.3d at 994 (holding that plaintiffs were irreparably harmed "by virtue of the fact that they [we]re likely to be unconstitutionally detained for an indeterminate period of time"); *see also, e.g.*, *Rosales-Mireles v. United States*, 585 U.S. 129, 139 (2018) (recognizing that "[a]ny amount of actual jail time is significant, and has exceptionally severe consequences for the incarcerated individual" (cleaned up)).

As a result of her arrest and detention, Petitioner is also suffering additional ongoing irreparable harms. She has serious medical conditions that have been substantially exacerbated by her arrest and detention. She thus also faces a "likelihood of irreparable injury to [her] health and safety" in detention, which separately constitutes irreparable harm. *Bent v. Barr*, 445 F. Supp. 3d 408, 419 (N.D. Cal. 2020) (granting TRO releasing medically vulnerable Petitioner from immigration detention during COVID-19 pandemic).

### C. The Balance of the Equities and the Public Interest Weigh Strongly in Petitioner's Favor.

When the government is the party opposing the request for emergency relief, the balance of the equities and the public interest merge. *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 991 (9th Cir. 2020) (citing *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018)). Here, the balance of equities overwhelmingly favors Petitioner, who faces irreparable injury in the form of threat to her health and life, ongoing constitutional violations and continued additional suffering if the

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

TRO is not granted. *See* Section II, *supra*; *Hernandez*, 872 F.3d at 996 (when "[f]aced with …

preventable human suffering, … the balance of hardships tips decidedly in plaintiffs' favor")

(internal citation omitted).

The public interest likewise weighs strongly in Petitioner's favor. As another California

district court recently concluded, "[t]he public has a strong interest in upholding procedural

protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the

public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.*

*F.*, 2021 WL 783561, at *3). More fundamentally, "[i]t is always in the public interest to prevent

the violation of a party's constitutional rights." *Index Newspapers LLC v. U.S. Marshals Serv.*,

977 F.3d 817, 838 (9th Cir. 2020) (citing *Padilla v. Immigr. & Customs Enf't*, 953 F.3d 1134,

1147-48 (9th Cir. 2020) (internal quotation marks omitted)).

**IV.    SECURITY**

No security is necessary here. Courts "may dispense with the filing of a bond when," as

here, "there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."

*Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003). It is also proper to waive the bond

requirement in cases raising constitutional claims, because "to require a bond would have a

negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other

members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D.

Cal. 1996). Finally, Petitioner's showing of a high likelihood of success on the merits supports

the court's waiving of bond in this case. *See, e.g.*, *People of State of Cal. ex rel. Van De Kamp v.*

*Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1326 (9th Cir.), *amended*, 775 F.2d 998 (9th Cir.

1985).

**V.    CONCLUSION**

For the foregoing reasons, Petitioner respectfully requests the Court grant a TRO to

restore the *status quo ante* that (1) immediately releases her from Respondents' custody and

enjoins Respondents from re-detaining her absent further order of this Court; (2) in the

alternative, immediately releases her from Respondents' custody and enjoins Respondents from

re-detaining her unless they demonstrate at a pre-deprivation bond hearing, by clear and

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S EX PARTE MOTION
FOR TEMPORARY RESTRAINING ORDER
Case No. 3:25-cv-06248

3015897

1    convincing evidence, that Petitioner is a flight risk or danger to the community such that her

2    physical custody is required; and (3) prohibits the government from transferring her out of this

3    District and/or removing her from the country until these habeas proceedings have concluded.

4

5    Dated:  July 25, 2025                                Respectfully submitted,

6                                                         KEKER, VAN NEST & PETERS LLP

7                                     By:    /s/ Erin E. Meyer

8                                            ERIN E. MEYER
                                             JONHATAN A. ARAGON
9
                                             Attorneys for Petitioner Paula Sofia
10                                           Ramirez Clavijo

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

15

3015897