UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAULA SOFIA RAMIREZ CLAVIJO,<br><br>    Petitioner,<br><br>    v.<br><br>POLLY KAISER, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the United States Department of Homeland Security, PAMELA BONDI, Attorney General of the United States, acting in their official capacities,<br><br>    Respondents. | Case No.  25-cv-06248-BLF<br><br>**ORDER GRANTING *EX PARTE* TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE**<br><br>[Re:  ECF 2] |

Before the Court is Petitioner Paula Sofia Ramirez-Clavijo' *Ex Parte* Motion for Temporary Restraining Order.  ECF 2.  Petitioner simultaneously filed her Petition for Writ of Habeas Corpus and *Ex Parte* Motion for Temporary Restraining Order against Respondents Acting Field Office Director Polly Kaiser, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pam Bondi on July 25, 2025, seeking an order temporarily enjoining Respondents from detaining her until such time as she has had an opportunity to challenge her detention before a neutral decisionmaker.

For the following reasons, the Court GRANTS Petitioner's *Ex Parte* Motion for Temporary Restraining Order.

**I.     BACKGROUND**

According to the declarations submitted by Petitioner, she is a 33-year-old asylum seeker who fled persecution in Colombia. She was briefly detained by federal agents after entering the United States. Determining that she was not a flight risk or a danger to the community, the agents released Petitioner with a notice to appear for removal proceedings in immigration court.

Petitioner has lived in California for nearly two years. In February 2025, she applied for asylum, withholding of removal, and relief under the Convention Against Torture. She has no criminal record. On July 24, 2025, Petitioner went to San Francisco Immigration Court for a routine hearing before Immigration Judge ("IJ") Patrick O'Brien. IJ O'Brien informed Petitioner that the government had moved to dismiss her case in order to initiate fast-track "expedited removal" proceedings. IJ O'Brien did not grant the motion to dismiss, instead setting a further hearing for August 21, 2025.

However, DHS agents arrested Petitioner before she could leave the courthouse. They did not present her with a warrant, verify her identity, or say why they were arresting her. Petitioner was taken to the San Francisco ICE office, located on a different floor of the same building at 630 Sansome Street in San Francisco, California. She was able to text her brother before the agents confiscated her phone and turned it off.

Petitioner, through counsel, filed a habeas petition and the present application for TRO on July 25, 2025. At the time the habeas petition was filed, Petitioner was in Respondents' physical custody in this District. However, while Counsel for Petitioner was in the building at 630 Sansome Street, ICE agents indicated their intent to transfer Petitioner to another detention facility in the near future.

Petitioner alleges that she will suffer serious and ongoing harm every day she remains in detention. She is a survivor of sexual assault and suffers from serious anxiety and depression. The stress caused by Petitioner's anxiety and depression have led her to develop alopecia, a medical condition that results in widespread hair loss. She wears a wig in order to manage the anxiety that is further caused by her alopecia, and that anxiety has been heightened by ICE's indication that her wig will be taken away in detention.

## II. LEGAL STANDARD

The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). And "a TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two Winter factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

## III. DISCUSSION

As a preliminary matter, the Court finds that the requirements for issuing a temporary restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this case. Petitioner's counsel has set out specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition and has stated that counsel attempted to contact the Civil Division Chief at the U.S. Attorney's Office for the Northern District of California multiple times on July 25, 2025, and provided a copy of

1  Petitioner's habeas petition by email to the Civil Chief.

2      The Court finds that Petitioner has shown at least that there are "serious questions going to
3  the merits" and that "the balance of hardships tips sharply" in her favor. *Weber*, 767 F.3d at 942.
4  Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no
5  person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const.
6  amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of
7  physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533
8  U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Courts have
9  previously found that individuals released from immigration custody on bond have a protectable
10 liberty interest in remaining out of custody on bond. *See Ortiz Vargas v. Jennings*, No.
11 20-cv5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp.
12 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a
13 liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond.");
14 *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his
15 Court joins other courts of this district facing facts similar to the present case and finds Petitioner
16 raised serious questions going to the merits of his claim that due process requires a hearing before
17 an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2
18 (N.D. Cal. Mar. 1, 2021).

19     For similar reasons as those discussed in the aforementioned cases, this Court finds that the
20 three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319
21 (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous
22 deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards,"
23 and "the Government's interest, including the function involved and the fiscal and administrative
24 burdens that the additional or substitute procedural requirement would entail," *id*. at 335—require
25 that Petitioner be immediately released from custody, and that she be given notice and a pre-
26 detention hearing before a neutral decisionmaker prior to being taken back into custody.
27 Petitioner has a substantial private interest in remaining out of custody, which would allow her to
28 live at home, work, obtain necessary medical care, and continue to provide for her family. *See*

4

1  *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  There is also a risk of erroneous deprivation that
2  the additional procedural safeguard of a pre-detention hearing would help protect against.  And,
3  like other courts in this district, this Court concludes that the government's interest in re-detaining
4  Petitioner without a hearing is "low," particularly in light of the fact that Petitioner has appeared
5  for her prior immigration hearings and she does not have a criminal record.  *See Jorge M.F.*, 2021
6  WL 783561, at *3; Ortega, 415 F. Supp. 3d at 970.

7        Petitioner is also likely to suffer immediate and irreparable harm in the absence of
8  preliminary relief.  The Ninth Circuit has recognized "irreparable harms imposed on anyone
9  subject to immigration detention," including "the economic burdens imposed on detainees and
10  their families as a result of detention, and the collateral harms to children of detainees whose
11  parents are detained."  *Hernandez v. Sessions,* 872 F.3d 976, 995 (9th Cir. 2017).  Those risks are
12  present here.  As previously described, Petitioner has serious medical conditions that are likely to
13  be exacerbated in detention.  Moreover, "[i]t is well established that the deprivation of
14  constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695
15  F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

16        Finally, the balance of the equities and the public interest, which merge in light of the fact
17  that the government is the opposing party, tip sharply in Petitioner's favor.  "[T]he public has a
18  strong interest in upholding procedural protections against unlawful detention, and the Ninth
19  Circuit has recognized that the costs to the public of immigration detention are staggering."  *Jorge*
20  *M. F.*, 2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and
21  then quoting *Hernandez*, 872 F.3d at 996); see also *Preminger v. Principi*, 422 F.3d 815, 826 (9th
22  Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has
23  been violated, because all citizens have a stake in upholding the Constitution.").  Without the
24  requested injunctive relief, Petitioner faces the danger of significant health consequences and
25  deprivation of her liberty.  Yet the comparative harm potentially imposed on Respondents is
26  minimal—a mere short delay in detaining Petitioner, should the government ultimately show that
27  detention is intended and warranted.  Moreover, a party "cannot reasonably assert that it is harmed
28  in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S.*

*Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

This Court therefore joins a series of other district courts that have recently granted temporary restraining orders barring the government from detaining noncitizens who have been on longstanding release in their immigration proceedings, without first holding a pre-deprivation hearing before a neutral decisionmaker. *See, e.g., Diaz v. Kaiser*, No. 25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); *Garcia v. Bondi*, No. 25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025). Although Petitioner filed her motion shortly after being detained, rather than immediately beforehand, the same reasoning applies to her situation. Her liberty interest is equally serious, the risk of erroneous deprivation is likewise high, and the government's interest in continuing to detain her without the required hearing is low. *See Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025) (granting a TRO as to an individual who had been detained over a month earlier).

Petitioner's immediate release is required to return her to the status quo. The status quo refers to "the last uncontested status which preceded the pending controversy." *Doe v. Noem*, No. 25-cv-00633, 2025 WL 1141279, at *9 (W.D. Wash. Apr. 17, 2025) (citing *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). That is the moment prior to the Petitioner's likely illegal detention. *See Kuzmenko v. Phillips*, No. 25-CV-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order requiring immediate release of the petitioner back to home confinement from custody, as a restoration of the status quo).

Accordingly, the Court hereby GRANTS Petitioner's *Ex Parte* Motion for a Temporary Restraining Order. Under Federal Rule of Civil Procedure 65, a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The rule "invests the district court 'with discretion as to the amount of security required, if any,'" and the court "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting

*Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). In this case, in light of the minimal risk of harm to the government, the Court determines that security is not required.

**IV.   ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1)   Petitioner's *Ex Parte* Motion for Temporary Restraining Order is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2)   Respondents are ENJOINED from transferring Petitioner out of this district or deporting her pending these habeas proceedings.

(2)   Respondents are ORDERED to immediately release Petitioner from Respondents' custody and ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker. This Order shall remain in effect until August 8, 2025.

(3)   The Petition for Writ of Habeas Corpus, Motion for Temporary Restraining Order, and this Order SHALL be served on Respondents such that they receive actual notice as soon as practicable, and no later than July 26, 2025, at 5:00 p.m., and Petitioner shall file proof of such service by no later than July 29, 2025, at 5:00 p.m. Email service is permitted.

(4)   Respondents shall provide a status report confirming Petitioner's release by July 29, 2025, at 5:00 p.m.

(5)   Respondents are ORDERED TO SHOW CAUSE in-person at a hearing before the undersigned on August 7, 2025, at 9:00 a.m., why a preliminary injunction should not issue. Respondents shall file a response to Petitioner's motion by no later than July 31, 2025, at 12:00 p.m. No reply shall be filed.

Dated: July 25, 2025

_____
BETH LABSON FREEMAN
United States District Judge