1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| PAULA SOFIA RAMIREZ CLAVIJO,<br><br>Plaintiff,<br><br>v.<br><br>POLLY KAISER, et al.,<br><br>Defendants. | Case No.  25-cv-06248-BLF<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>[Re:  ECF No. 2] |

Petitioner Paula Sofia Ramirez Clavijo ("Petitioner") filed this Petition for Writ of Habeas Corpus against Respondents Acting Field Office Director Polly Kaiser, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pam Bondi (collectively, "Respondents" or "Government") on July 25, 2025. ECF 1 ("Pet."). Petitioner simultaneously filed her *Ex Parte* Motion for Temporary Restraining Order ("TRO"). ECF 3 ("Mot."). On the same day, the Court issued a TRO requiring the Government to immediately release Petitioner and enjoining and restraining it from re-detaining her without notice and a pre-deprivation hearing before a neutral decision maker. ECF 10 at 7. The Court ordered the TRO to remain in effect until August 8, 2025, which was extended to August 15, 2025, by stipulation and further extended to August 22, 2025, by the Court under Fed. R. Civ. P. 65(b)(2).  ECF 10 at 7; ECF 16 at 3; ECF 23.

On July 29, 2025, the Government notified the Court that Petitioner was released from the custody of United States Immigration and Customs Enforcement on July 25, 2025, pursuant to the TRO. ECF 14.

Now before the Court is Petitioner's Motion for a Preliminary Injunction. Respondents filed a Response to Application for Order to Show Cause. ECF 20. ("Opp."). The Court held a hearing

on August 15, 2025. ECF 22. At the hearing, the Court invited Petitioner to file a reply. ECF 24, Hearing Tr. at 44:5-9. On August 18, 2025, Petitioner file a reply. ECF 26 ("Reply").

For the following reasons, the Court GRANTS Petitioner's Motion for a Preliminary Injunction.

## I.    BACKGROUND

Petitioner is a 33-year-old asylum seeker who is a citizen of Colombia. ECF 1, Petition for Writ of Habeas Corpus ("Pet.") at ¶ 1; ECF 19-1 at 2. Petitioner is a survivor of sexual assault and suffers from serious anxiety and depression. ECF 3-3, Declaration of Fredy Javier Ramirez Clavijo ("Ramirez Clavijo Decl.") ¶ 9.

On December 4, 2023, Petitioner entered the United States without inspection, admission or parole. ECF 19, Declaration of Thomas Auer ("Auer Decl.") ¶ 6; ECF 19-1 at 2. Department of Homeland Security ("DHS") Border Patrol encountered Petitioner approximately two miles west of the San Ysidro Port of Entry, and approximately 106 yards north of the United States-Mexico international boundary. ECF 19-1 at 2. Petitioner was taken into custody and transported for processing. *Id.* During processing, Petitioner admitted that she was not in possession of any valid immigration documents that would allow her to legally enter, pass through, or remain in the United States. *Id.* at 3. Petitioner also admitted that she illegally entered the United States on December 4, 2023, without presenting herself to an immigration officer for inspection. *Id.* During inspection, Petitioner "did not indicate fear of returning to Colombia, and stated that she has no immigration petitions pending on her behalf." *Id.*

On December 6, 2023, DHS issued Petitioner a Form I-862 Notice to Appear. ECF 19-2 at 1. The Notice of Appear stated that Petitioner was not "admitted or paroled." ECF 19-2 at 1. The Notice to Appear instructed Petitioner to appear before an immigration judge on July 24, 2025, in San Francisco. *Id.* On the same day, Petitioner was released pending her immigration court proceedings. ECF 19, Auer Decl. ¶ 9; ECF 19-1 at 4. Petitioner was released on an Order of Release on Recognizance. ECF 26-2, Declaration of Jonhatan A. Aragon in Support of Petitioner's Reply Brief ("Aragon Dec."), Ex. A, Order of Release on Recognizance. The release was pursuant to 8 U.S.C. § 1226 ("§ 1226"). *Id.*

Petitioner has lived in California for nearly two years. ECF 3-3, Ramirez Clavijo Decl. ¶ 4. In February 2024, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.* ¶ 6. Petitioner has no criminal record. *Id.* ¶ 5; ECF 19-1 at 3.

On July 24, 2025, Petitioner appeared at the San Francisco Immigration Court for her scheduled hearing before Immigration Judge ("IJ") Patrick O'Brien. ECF 3-2, Declaration of Jonathan A. Aragon ("Aragon Decl.") ¶ 3. IJ O'Brien informed Petitioner that the Government had moved to dismiss her case in order to initiate fast-track "expedited removal" proceedings. *Id.* ¶ 4. IJ O'Brien did not immediately rule on the motion to dismiss, and instead gave Petitioner time to respond and set a further hearing for August 21, 2025. *Id.* Immediately after the hearing, U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") officers arrested Petitioner outside of the courtroom pursuant to a Warrant of Arrest. ECF 19 ¶¶ 11-12; ECF 19-5, Warrant for Arrest of Alien. The Warrant of Arrest was issued under 8 U.S.C. § 1226. ECF 19-5. DHS issued Petitioner a Notice of Custody Determination also under 8 U.S.C. § 1226. ECF 26-3. Petitioner remained in ICE custody until she was released on July 25, 2025, pursuant to the Court's Order. ECF 19 ¶¶ 13-14. On July 25, 2025, Petitioner received a letter from ICE that granted parole to Petitioner pursuant to 8 CFR § 212.5. ECF 26-4.

On August 14, 2025, IJ O'Brien granted without prejudice the Government's motion to dismiss. ECF 26-5. On August 18, 2025, Petitioner appealed the Immigration Court's order granting the Government's motion to dismiss to the Board of Immigration Appeals. ECF 26-6.

## II.    LEGAL STANDARD

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. "If a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in

the plaintiff's favor, and the other two Winter factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal alterations and citations omitted).

**III.   DISCUSSION**

**A.  Petitioner Is Likely to Succeed on the Merits.**

The first Winter factor asks whether the Plaintiff is "likely to succeed on the merits" of his claims. *Winter*, 555 U.S. at 20.

Petitioner argues that her detention violates substantive due process because she is neither a flight risk nor a danger to the community. Mot. at 7-9. Petitioner argues that her procedural due process rights would be violated if she is deprived the opportunity to contest her detention before a neutral decisionmaker. Mot. at 9-12.

In response, Respondents argue that Petitioner cannot show a likelihood of success on her claim that she is entitled to a custody hearing before a neutral decisionmaker because her detention is mandatory under the statute. Opp. at 7-8. Respondents argue that the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) does not apply. *Id.* at 9-10. Respondents argue that, in enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress did not intend to treat individuals like Petitioner who entered the United States unlawfully better than aliens who appear at a port of entry. *Id.* at 10-11. Respondents further argue that Petitioner cannot obtain an injunction prohibiting her transfer because the Attorney General has discretion to determine the appropriate place of detention. *Id.* at 11.

The Court addresses the Parties' arguments in turn.

**1.  Petitioner Has Shown that She Has Been Conferred a Protected Liberty Interest through the Government's Actions.**

Petitioner argues that she has a protected liberty interest because she was placed in full removal proceedings and released from immigration custody by the affirmative act of the Government. Mot. at 9-10; Reply at 2-5.

In response, Respondents argue that Petitioner is a noncitizen subject to expedited removal because she was neither "admitted or paroled" into the United States nor was she "physically present in the United States continuously for the two-year period immediately preceding the date of the

United States District Court
Northern District of California

1   determination of inadmissibility." Opp. at 7 (citing ECF 19 ¶¶ 8-9).  Respondents argue that 8 U.S.C.

2   § 1225 ("§ 1225") mandates Petitioner's detention because she is a noncitizen subject to expedited

3   removal. Opp. at 7-8.

4        8 U.S.C. § 1225 provides that an alien who "arrives in the United States," or "[is] present"

5   in this country but "has not been admitted," is "an applicant for admission." 8 U.S.C. § 1225(a)(1).

6   8 U.S.C. § 1225(b)(1)(A) provides that "[i]f an immigration officer determines that an alien . . . who

7   is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this

8   title, the officer shall order the alien removed from the United States without further hearing or

9   review unless the alien indicates either an intention to apply for asylum under section 1158 of this

10  title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). § 1225(b)(1) applies to an alien who "has

11  been physically present in the United States continuously for the 2-year period immediately prior to

12  the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). 8 U.S.C. §

13  1225(b)(2)(A) provides that "[subject to scenarios do not apply here], in the case of an alien who is

14  an applicant for admission, if the examining immigration officer determines that an alien seeking

15  admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a

16  proceeding under section 1229a of this title." While "U.S. immigration law authorizes the

17  Government to detain certain aliens seeking admission into the country under §§

18  1225(b)(1) and (b)(2)," "[i]t also authorizes the Government to detain certain aliens already in the

19  country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v.*

20  *Rodriguez*, 583 U.S. 281, 289 (2018). Under 8 U.S.C. § 1226(a) ("§ 1226(a)"), for an alien who is

21  "arrested and detained pending a decision on whether the alien is to be removed from the United

22  States," the Attorney General "may continue to detain the arrested alien," "may release the alien"

23  on "bond," or "may release the alien" on "conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2).

24       The record unequivocally shows that the Government affirmatively placed Petitioner in full

25  removal proceedings under 8 U.S.C. § 1229a and released her under § 1226(a), not § 1225(b). *See*

26  ECF 19-2 Auer Decl., Ex. 2, Notice to Appear; ECF 26-2, Aragon Decl., Ex. A, Order of Release

27  on Recognizance. This evidence clearly shows that Respondents have consistently treated Petitioner

28  as subject to detention on a discretionary basis under § 1226(a). *See Gomes v. Hyde*, No. 1:25-CV-

United States District Court
Northern District of California

11571-JEK, 2025 WL 1869299, at *1 (D. Mass. July 7, 2025) ("Section 1226(a) establishes a discretionary detention framework."). The Government's election to place Petitioner in full removal proceedings under § 1229a and releasing Petitioner under § 1226(a) provided Petitioner a liberty interest that is protected by the Due Process Clause. *See, e.g., Ortega v. Bonner*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [noncitizen] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025) ("[I]ndividuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond.").

The Court is not persuaded by Respondents' argument that DHS may elect to pursue mandatory detention under 8 U.S.C. § 1225(b) at any time. Opp. at 8. Here, the record clearly shows that the Government has consistently treated Petitioner pursuant to the framework under § 1226(a), and that DHS most recently detained Petitioner on July 24, 2025, by a warrant pursuant to that statute. *See* ECF 26-2, Aragon Decl. Ex. A, Order of Release on Recognizance on December 6, 2023 (stating Petitioner "ha[s] been arrested and placed in removal proceedings. In accordance with Section 236 of the Immigration and Nationality Act [§ 1226]," Petitioner was "released on [her] own recognizance."); ECF 19-5, Auer Decl. Ex. 5, Warrant for Arrest of Alien under § 1226(a); ECF 26-3, Aragon Decl. Ex. B. Notice of Custody Determination dated July 24, 2025 (stating Petitioner was detained "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act [§ 1226] and part 236 of title 8, Code of Federal Regulations"). The Court notes that none of the documents from DHS referenced § 1225(b). Accordingly, the Court cannot credit Respondents' argument that § 1225(b) can serve as a new basis for Petitioner's detention, which Respondents raised post hoc and introduced for the first time in this litigation. *See Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *1 (D. Mass. July 7, 2025) ("Because Gomes was arrested on a warrant and ordered detained under Section 1226, his detention continues to be

governed by Section 1226(a)'s discretionary framework."). Having elected to proceed with full removal proceedings under § 1226, Respondents cannot now reverse course and institute § 1225 expedited removal proceedings. Respondents have cited no authority supporting their argument. Further, the Court finds persuasive the reasoning in *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *7-9 (S.D.N.Y. Aug. 13, 2025) holding that a person placed in full removal proceedings under § 1226 cannot thereafter be detained under § 1225. *Accord Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *1 (D. Mass. July 7, 2025).

The Court is not persuaded by Respondents' reliance on *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). Opp. at 9-10. In *Thuraissigiam*, the noncitizen crossed the southern boarder without inspection or any entry document, was apprehended by a Border Patrol agent within 25 yards of the border, was never released from custody, and was placed in expedited removal proceedings pursuant to § 1225(b). *See Thuraissigiam*, 591 U.S. at 114. After an asylum officer denied the noncitizen's asylum request, the noncitizen filed a federal habeas petition, requesting "a writ of habeas corpus, an injunction, or a writ of mandamus directing the Department to provide him a new opportunity to apply for asylum and other applicable forms of relief." *Id.* at 114-15 (cleaned up). The Supreme Court found the noncitizen's claim for habeas corpus seeking additional review of his asylum claim was beyond the scope established for habeas corpus under the Suspension Clause. *Id.* at 127. Unlike *Thuraissigiam*, here, Petitioner was placed in full removal proceedings and DHS affirmatively released Petitioner under the discretionary framework pursuant to § 1226(a). *See* ECF 19-2; ECF 26-2. Thus, because the Government decided to proceed with Petitioner's immigration case under § 1226(a) and released Petitioner on her own recognizance Petitioner has a protected liberty interest, and the Due Process Clause protects her from unlawful detention. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").

//

//

**2. Petitioner Has Shown that She Faces a Substantial Risk of Erroneous Deprivation of Her Liberty Interest.**

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond. *See Ortiz Vargas v. Jennings*, No. 20-cv5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021).

**a. Substantive Due Process**

As an initial matter, Petitioner brings a substantive due process challenge to her detention. Mot. at 7-9. Petitioner argues that there is no credible argument that she is a danger to the community, or that she has a flight risk. *See* Mot. at 8-9. The Court notes that Respondents do not make any arguments to the contrary. *See generally* Opp.

The Court need not address Petitioner's substantive due process claim at this stage because granting a preliminary injunction enjoining Respondents from detaining Petitioner without a notice and a pre-deprivation hearing before a neutral decisionmaker averts "the threat of any imminent deprivation of her substantive due process rights." *Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *2 n.1 (N.D. Cal. July 24, 2025).

**b. Procedural Due Process**

Petitioner argues that Respondents violated her procedural due process rights by depriving her of the opportunity to contest her arrest and detention before a neutral decisionmaker. Mot. at 9-13. Petitioner argues that she has "established a protected liberty interest," and that under the three-factor test established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) weighs heavily in favor of

granting her the sought-after injunctive relief. Mot. at 10-12.

In response, Respondents argue that the *Mathews* factors do not apply because the Supreme Court has never applied them "in addressing due process claims raised by noncitizens held in civil immigration detention." Opp. at 9 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) and *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)). Respondents further argue that Petitioner is subject to expedited removal and she "cannot assert a protected property or liberty interest in additional procedures not provided by the statute." Opp. at 10.

In *Mathews*, the Supreme Court explained that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332. The Supreme Court set out three factors relevant to the due process inquiry—"the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," *Mathews*, 424 U.S. at 335.

In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* factors to a procedural due process challenge to immigration detention under 8 U.S.C. § 1226(a) ("§ 1226(a)"). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207-10 (9th Cir. 2022). The Ninth Circuit explained that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Id.* at 1206. While the Ninth Circuit "assume[d] without deciding" that the *Mathews* factors applied, the Ninth Circuit nonetheless explained that "other circuits (reaching conflicting outcomes) have applied the *Mathews* test" in due process challenges to § 1226(a). *Id.* at 1206-07 (citing *Miranda v. Garland*, 34 F.4th 338, 358-59 (4th Cir. 2022), *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-28 (1st Cir. 2021) and *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d. Cir. 2020)). The Court notes that other courts in this Circuit regularly apply *Mathews* to due process challenges in immigration context. *See, e.g., Pinchi v. Noem*, No. 5:25-CV-05632-PCP, 2025 WL 2084921, at *3-4 (N.D. Cal. July 24, 2025); *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *6-8 (E.D. Cal. July 11, 2025); *Guillermo M. R. v. Kaiser*,

No. 25-CV-05436-RFL, 2025 WL 1983677, at *4-6 (N.D. Cal. July 17, 2025). Here, on December 6, 2023, the Government placed Petitioner in full removal proceedings under § 1229a and released her on her own recognizance pursuant to § 1226(a). *See* ECF 19-2; ECF 26-2. Petitioner was also arrested on July 24, 2025, by ICE pursuant to a Warrant for Arrest (Form I-200) under § 1226(a). ECF 19, Auer Decl. ¶¶ 11–12; ECF 19-4 at 4; ECF 19-5. Thus, the Court joins other courts in the Ninth Circuit and applies the *Mathews* factors to determine the constitutionally sufficient procedures to protect Petitioner's liberty interest. Although Respondents choose to ignore their own election to place Petitioner into full removal proceedings, including all of the rights obtained under § 1226, this Court finds that § 1225 simply does not apply in this case based on the Respondents' own actions.

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because she has been released pending civil removal proceedings. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Petitioner, who has serious medical conditions, has an interest in remaining in her home, being with her family members, and monitoring her medical conditions out of immigration custody. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025) (cleaned up) (holding that petitioner had a substantial private interest in remaining out of immigration custody for him to work, live at home, and be with family and friends to "form the enduring attachments of normal life").

As to the second *Mathews* factor, the Court finds that there is a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. Here, neither Petitioner nor Respondents had an opportunity to determine whether any valid basis exists for her detention because Petitioner has not received any bond or custody hearing. *See Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679 (E.D. Cal. July 11, 2025). Additionally, because Petitioner's substantial liberty interest is at stake, due process also requires Respondents to prove "by clear and convincing evidence that [Petitioner] is a flight risk or danger to the community" before depriving her of that liberty. *Singh v. Andrews*, No. 1:25-CV-00801-KES-SKO (HC), 2025 WL 1918679, at *8 (E.D. Cal. July 11, 2025). Here, Respondents have not shown any evidence that Petitioner is a flight risk or a danger to the community. Indeed, after Petitioner was released from immigration custody in December 2023, she attended her master calendar hearing with the San

1   Francisco Immigration Court 18 months later in July 2025. *See* ECF 19-1 at 4; ECF 19-2; ECF 3-1,

2   Meyer Decl. ¶ 4. Thus, the Court finds that this factor favors Petitioner.

3       As to the third *Mathews* factor, Petitioner has no criminal record and has diligently attended

4   the required hearing in immigration court after DHS released her on her own recognizance in

5   December 2023. *See* ECF 3-3 ¶ 5; ECF 19-1 at 4; ECF 19-2; ECF 3-1, Meyer Decl. ¶ 4. Since

6   December 2023, Petitioner has lived with her brother in Sunnyvale, California and has worked to

7   build a stable life in the San Francisco Bay Area. ECF 3-3, ¶ 4. The Court notes that Respondents

8   do not claim any change in material circumstances that would warrant reassessment of Petitioner's

9   fight risk or danger to the community. Thus, the Court finds that Respondents' interest in detaining

10  Plaintiff without a hearing is low.

11      For the above reasons, the Court finds that each of the *Mathews* factors favors Petitioner.

12  Petitioner thus has shown a likelihood of success on the merits of her claim that she is entitled to a

13  pre-deprivation hearing before a neutral decisionmaker prior to any re-arrest or detention under the

14  Due Process Clause.

15      ### 3.  Petitioner can obtain an injunction prohibiting her transfer to another

16      ### district.

17      Petitioner seeks an injunction that "prohibits the government from transferring her out of

18  this District . . . until these habeas proceedings have concluded." Mot. at 21. Respondents argue that

19  Petitioner cannot obtain an injunction prohibiting her transfer because "[t]he Attorney General has

20  discretion to determine the appropriate place of detention." Opp. at 11. Respondents contend that

21  Petitioner has not shown "any transfer would interfere with the ability to present her case or access

22  counsel more than any other similarly situated detainee." *Id.*

23      8 U.S.C. § 1252(a)(2)(B)(ii) precludes the exercise of federal court jurisdiction "to review .

24  . . any . . . decision or action of the Attorney General or the Secretary of Homeland Security the

25  authority for which is specified under this subchapter to be in the discretion of the Attorney General

26  or the Secretary of Homeland Security." 8 U.S.C. § 1231(g) ("§ 1231(g)") provides that "[t]he

27  Attorney General shall arrange for appropriate places of detention for aliens detained pending

28  removal or a decision on removal." In *Ozturk*, the Second Circuit found that " '§ 1231(g) does not

United States District Court
Northern District of California

address transfers of noncitizen detainees at all,' and it surely does not 'explicitly grant the Attorney General or the Secretary of Homeland Security discretion with respect to transfers.' " *Ozturk v. Hyde*, 136 F.4th 382, 396 (2d Cir. 2025) (cleaned up) (quoting *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 209 (4th Cir. 2019)); *see Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 20 (1st Cir. 2007) (§ 1231(g) "fails to 'specify' that individualized transfer decisions are in the Attorney General's discretion."). Thus, the Court finds that the statute does not specifically provide the Attorney General the discretion to decide Petitioner's place of detention.

The Court has " 'inherent authority to protect its proceedings,' and to 'meet new situations which demand equitable intervention, and to accord all the relief necessary to correct the particular injustices involved in these situations.' " *Ozturk*, 136 F.4th at 394-95 (cleaned up) (quoting *Degen v. United States*, 517 U.S. 820, 823 (1996) and *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 248 (1944)). Here, the Court finds that equities strongly favor Petitioner remaining in this District pending the resolution of this matter because this will expedite resolution of this matter, provide Petitioner ready access to medical and legal services, and address concerns about the conditions of her detention. *See Ozturk v. Trump*, 779 F. Supp. 3d 462, 496 (D. Vt.), *amended sub nom. Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025). Thus, pursuant to the Court's inherent power, the Court orders that in the event of re-detention, Respondents shall not remove Petitioner from this District pending the resolution of this matter.

### B. Petitioner Has Shown Irreparable Harm.

Petitioner argues that she will suffer immense irreparable injury if she is in ICE detention. Mot. at 13. Petitioner argues that "the unlawful deprivation of physical liberty is the quintessential irreparable harm." *Id.* Petitioner argues that her arrest and detention will "substantially exacerbate[]" her "serious medical conditions." *Id.*

In response, Respondents argue that Petitioner has failed to meet her burden of establishing that she will suffer irreparable harm absent a preliminary injunction. Opp. at 11. Respondents argue that Petitioner's assertion of "serious medical conditions" is conclusory and is contradicted by the record. *Id.* Additionally, Respondents argue that Petitioner's alleged injury of "unlawful deprivation

1    of physical liberty" is "essentially inherent in detention." *Id.* (quoting *Lopez Reyes v. Bonnar*, No

2    18-cv-07429-SK, 2018 WL 7474861 at *10 (N.D. Cal. Dec. 24, 2018)).

3         The Court finds that Petitioner has shown that she is likely to suffer immediate and

4    irreparable harm in the absence of preliminary injunctive relief. The Ninth Circuit has recognized

5    the "irreparable harms imposed on anyone subject to immigration detention," including "subpar

6    medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees

7    and their families as a result of detention, and the collateral harms to children of detainees whose

8    parents are detained." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Here, Petitioner

9    has serious medical conditions that are likely to be exacerbated in detention. Petitioner is a survivor

10   of sexual assault and suffers from serious anxiety and depression. ECF 3-3, Ramirez Clavijo Decl.

11   ¶ 9. Petitioner wears a wig to manage the anxiety caused by her alopecia, and ICE has indicated that

12   her wig would be taken away in detention. ECF 3-2, Aragon Decl. ¶ 9. Thus, Petitioner has

13   demonstrated that the consequences of her re-detention would be serious and irreparable.

14        Further, "[i]t is well established that the deprivation of constitutional rights 'unquestionably

15   constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994-95 (quoting *Melendres v. Arpaio*, 695

16   F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved,

17   most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v.

18   Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (cleaned up). As discussed, if Petitioner is re-

19   detained without a pre-detention hearing before a neutral decisionmaker, the deprivation of liberty

20   that Petitioner faces is likely unconstitutional and is an immediate and irreparable harm. *Hernandez*,

21   872 F.3d at 995 (holding Plaintiffs have met their burden to show irreparable harm that they "will

22   likely be deprived of their physical liberty unconstitutionally in the absence of the injunction").

23        **C.  The Balance of Equities and Public Interest Favor an Injunction.**

24        The third Winter factor considers whether "the balance of equities tips" in the movant's

25   favor. *Winter*, 555 U.S. at 20. The fourth Winter factor considers whether an injunction is in the

26   public interest. *Id.* When the government is the nonmoving party, "the last two *Winter* factors

27   merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted).

28        Petitioner argues that the balance of equities favors her because she would face "irreparable

United States District Court
Northern District of California

United States District Court
Northern District of California

injury in the form of threat to her health and life, ongoing constitutional violations and continued additional suffering" if she is re-detained by DHS. Mot. at 13-14. Petitioner further argues that there is a strong interest to protect against unlawful detention and to prevent the violation of her constitutional rights. *Id.* at 14. In response, Respondents argue that the Government has a compelling interest in the steady enforcement of its immigration laws. Opp. at 12-13.

The Court finds that the balance of equities tips heavily in Petitioner's favor, and public interest favors an injunction. The public has an interest in the orderly and efficient administration of this country's immigration laws "but also has a strong interest 'in upholding procedural protections against unlawful detention.' " *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 2025 WL 1983677, at *10 (N.D. Cal. July 17, 2025) (quoting *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020)).  "[T]the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (cleaned up) (quoting *Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Here, the Court finds that the potential harm to Petitioner is significant, while the potential harm to Respondents is minimal. As discussed, without the requested preliminary injunctive relief, detention poses a significant threat to Petitioner's health and liberty interest. Respondents risk only a short delay in detaining Petitioner if Respondents ultimately show that detention is warranted. Further, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994 ("any detention incidental to removal must bear a reasonable relation to its purpose.") (cleaned up).

"Faced with a choice 'between minimally costly procedures and preventable human suffering,' . . . the Court concludes 'that the balance of hardships tips decidedly in petitioner's favor.'" *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (simplified).

* * *

For the above reasons, all four *Winter* factors favor issuing Petitioner's requested injunction preventing Respondents from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker.

**D. Security**

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted). "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* Because the Court perceives no prejudice to Respondents resulting from the preliminary injunction, the Court finds it appropriate to issue the preliminary injunction without requiring security.

//
//
//
//
//
//
//
//
//
//
//
//
//

**IV.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) The Court GRANTS a Preliminary Injunction.

(2) Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker where the Government bears the burden of proving by clear and convincing evidence that changed circumstance render her a danger to the community or a flight risk, and that no conditions other than her detention would be sufficient to prevent such harms.

(3) Respondents are ENJOINED from transferring Petitioner out of this district or deporting her pending these habeas proceedings.

(4) This Preliminary Injunction SHALL remain in force throughout the pendency of this action unless earlier modified by the Court.


Dated:  August 21, 2025

_____
BETH LABSON FREEMAN
United States District Judge