**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PAULA SOFIA RAMIREZ CLAVIJO, | Case No.  25-cv-06248-BLF |
| Plaintiff, | |
| v. | **ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS** |
| POLLY KAISER, et al., | [Re:  ECF No. 1] |
| Defendants. | |

On July 24, 2025, Petitioner Paula Sofia Ramirez Clavijo ("Petitioner") was seized by U.S. Immigration and Customs Enforcement ("ICE"), a division of the Department of Homeland Security ("DHS"), at an immigration hearing at the San Francisco Immigration Court.  Petitioner is an asylum-seeker and survivor of sexual assault who has lived in the United States since December 2023.  She filed this petition for writ of habeas corpus, arguing that her detention violated her constitutional rights.  *See* ECF No. 1 ("Pet."); *see also* ECF No. 32 ("Traverse"). Respondents Field Office Director of the San Francisco Immigration and Customs Enforcement Office Sergio Albarran, Acting Director of Immigration and Customs Enforcement David Venturella, Secretary of the Department of Homeland Security Markwayne Mullin, and Acting United States Attorney General Todd Blanche (collectively, "Respondents" or "Government") submitted a return in opposition.[1]  ECF No. 31 ("Return").  The parties jointly waived a hearing on the merits of the petition and submitted the matter for decision based on the record before the Court.  ECF No. 34.  For the reasons that follow, the habeas petition is GRANTED.

---

[1] Although Petitioner has not formally substituted the Respondents in this case, the parties' papers reflect that each Respondent has been automatically substituted in this matter pursuant to Federal Rule of Civil Procedure 25(d).  *See* ECF Nos. 31–32.

United States District Court
Northern District of California

## I.    BACKGROUND

At the time this action was filed, Petitioner was a 33-year-old asylum seeker who is a citizen of Colombia.  Pet. at ¶ 1; ECF 19-1 at 1.  Petitioner is a survivor of sexual assault and suffers from serious anxiety and depression.  Declaration of Fredy Javier Ramirez Clavijo ¶ 9, ECF 3-3 ("Ramirez Clavijo Decl.").  She has no criminal record.  *Id.* ¶ 5; ECF 19-1 at 3.

On December 4, 2023, Petitioner entered the United States without inspection, admission, or parole.  Declaration of Thomas Auer ¶ 5, ECF 19 ("Auer Decl."); ECF 19-1 at 2.  DHS Border Patrol encountered Petitioner approximately two miles west of the San Ysidro Port of Entry, and approximately 106 yards north of the United States-Mexico international boundary.  ECF 19-1 at 2. Petitioner was taken into custody and transported for processing.  *Id.*  During processing, Petitioner admitted that she was not in possession of any valid immigration documents that would allow her to legally enter, pass through, or remain in the United States.  *Id.* at 3.  Petitioner also admitted that she illegally entered the United States on December 4, 2023, without presenting herself to an immigration officer for inspection. *Id.* During inspection, Petitioner "did not indicate fear of returning to Colombia, and stated that she has no immigration petitions pending on her behalf." *Id.*

On December 6, 2023, DHS issued Petitioner a Form I-862 Notice to Appear.  ECF 19-2 at 1.  The Notice to Appear stated that Petitioner was not "admitted or paroled." *Id.*  The Notice to Appear instructed Petitioner to appear before an immigration judge on July 24, 2025, in San Francisco. *Id.*  On the same day, Petitioner was released pending her immigration court proceedings. Auer Decl. ¶ 9; ECF 19-1 at 4.  Petitioner was released on an Order of Release on Recognizance. Declaration of Jonhatan A. Aragon in Support of Petitioner's Supplemental Brief ("Aragon Reply Decl."), Ex. A, Order of Release on Recognizance, ECF 26-2.  The release was pursuant to 8 U.S.C. § 1226 ("§ 1226"). *Id.*  Subsequently, in February 2024, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture.  Ramirez Clavijo Decl. ¶ 6.

On July 24, 2025, Petitioner appeared at the San Francisco Immigration Court for her scheduled hearing before Immigration Judge ("IJ") Patrick O'Brien.  Declaration of Jonhatan A. Aragon ¶ 3, ECF 3-2.  IJ O'Brien informed Petitioner that the Government had moved to dismiss her case in order to initiate fast-track "expedited removal" proceedings. *Id.* ¶ 4.  IJ O'Brien did not

immediately rule on the motion to dismiss and instead gave Petitioner time to respond and set a further hearing for August 21, 2025. *Id.* Immediately after the hearing, ICE Enforcement and Removal Operations officers arrested Petitioner outside of the courtroom pursuant to a Warrant of Arrest. ECF 19 ¶¶ 11–12; ECF 19-5, Warrant for Arrest of Alien. The Warrant of Arrest was issued under 8 U.S.C. § 1226. ECF 19-5. DHS issued Petitioner a Notice of Custody Determination also under 8 U.S.C. § 1226. ECF 26-3. Petitioner remained in ICE custody until she was released on July 25, 2025, pursuant to the Court's Order. ECF 19 ¶¶ 13–14. On July 25, 2025, Petitioner received a letter from ICE that granted parole to her pursuant to 8 CFR § 212.5. ECF 26-4.

On August 14, 2025, IJ O'Brien granted without prejudice the Government's motion to dismiss. ECF 26-5. On August 15, 2025, Petitioner appealed the Immigration Court's order granting the Government's motion to dismiss to the Board of Immigration Appeals. ECF 26-6. That appeal is still pending. ECF No. 31-2 at 10. Accordingly, Petitioner is still in removal proceedings. *See* 8 C.F.R. § 1003.39; *see also* Return at 1.

On August 21, 2025, the Court issued a preliminary injunction enjoining the Government from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decision maker, transferring Petitioner out of the district, and deporting Petitioner pending these habeas proceedings. ECF No. 27.

## II.    LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas*

*v. Davis*, 533 U.S. 678, 687 (2001).

## III.    DISCUSSION

Petitioner argues that her detention violates substantive due process because she is neither a flight risk nor a danger to the community.  ECF No. 3 at 7–9 ("Mot.").  Petitioner argues that her procedural due process rights would be violated if she is deprived of the opportunity to contest her detention before a neutral decisionmaker.  *Id.* at 9–13.  Petitioner also asserts claims for unlawful arrest under the Fourth Amendment, violation of the Administrative Procedure Act, and violation of the right to access courts and petition for redress under the First and Fifth Amendments.  *See* Pet. ¶¶ 77–98.

In response, "Respondents acknowledge that the reasoning in this Court's earlier decision in this case and in *Jaraba Oliveros v. Kaiser* would control the result here . . . as the facts are not materially distinguishable."  Return at 4.  Accordingly, Respondents submitted an "abbreviated response in lieu of formal return to preserve the legal issues and to conserve judicial and party resources" that "incorporate[s] by reference[] the legal arguments . . . presented in opposition to Petitioner's motion for preliminary injunction."  *Id.* at 2, 4.  Respondents' primary argument is that Petitioner's detention is mandatory under 8 U.S.C. § 1225(a)(1).  *Id.* at 2–4; *see also* ECF No. 20 at 7–8 ("Opp.").  Although not restated in the return, Respondents also previously argued that the three-part test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976) does not apply.  *See* Opp. at 9–10.

The Court begins with Petitioner's procedural due process claim because it is dispositive.  It then turns to Petitioner's substantive due process claim and other claims.

### A.    Merits of the Petition

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas*, 533 U.S. at 690. Petitioner argues that her procedural and substantive due process rights would be violated by re-detention without a custody hearing before a neutral arbiter at which the government bears the

4

burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community. Pet. ¶¶ 67–76.

### i.    Petitioner's Protected Liberty Interest

The threshold issue is whether Petitioner has a constitutionally protected liberty interest such that the Due Process clause applies. Petitioner argues that she has a protected liberty interest because, after being placed in full removal proceedings, she was released from immigration custody by DHS under 8 U.S.C. § 1226 ("§ 1226"). Mot. at 9–10; Traverse at 1. Respondents argue that 8 U.S.C. § 1225 ("§ 1225") mandates Petitioner's detention because she is a noncitizen subject to expedited removal. Return at 2–4; *see also* Opp. at 7–8.

8 U.S.C. § 1225 provides that an alien who "arrives in the United States," or is "present" in this country but "has not been admitted," is "an applicant for admission." 8 U.S.C. § 1225(a)(1). 8 U.S.C. § 1225(b)(1)(A) provides that "[i]f an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). § 1225(b)(1) applies to an alien who "has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). 8 U.S.C. § 1225(b)(2)(A) provides that, subject to scenarios that do not apply here, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." While "U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," "[i]t also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Under 8 U.S.C. § 1226(a), for an alien who is "arrested and detained pending a decision on whether the alien is to be removed from the United States," the Attorney General "may continue to detain the arrested alien," "may release the alien" on "bond," or

"may release the alien" on "conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2).

After the Petition was fully briefed, the Ninth Circuit issued its decision in *Rodriguez Vazquez v. Bostock*. The Ninth Circuit held that noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." *Rodriguez Vazquez v. Bostock*, --- F.4th ----, 2026 WL 2196424, at *3 (9th Cir. July 30, 2026). Because Petitioner was apprehended in the interior of the United States, she is subject to § 1226—not § 1225, as Respondents contend. *See* Return at 2–4; Opp. at 8.

The record also unequivocally shows that the Government affirmatively placed Petitioner in full removal proceedings under 8 U.S.C. § 1229a and released her under § 1226(a), not § 1225(b), and that DHS last detained Petitioner on July 24, 2025, by a warrant pursuant to § 1226(a). *See* Aragon Reply Decl. Ex. A, Order of Release on Recognizance (stating Petitioner "ha[s] been arrested and placed in removal proceedings. In accordance with section 236 of the Immigration and Nationality Act [§ 1226]," Petitioner was "released on [her] own recognizance."); Auer Decl., Ex. 5, Warrant for Arrest of Alien under § 1226(a), ECF No. 19-5; Aragon Reply Decl., Ex. B, Notice of Custody Determination, ECF 26-3 (stating Petitioner was detained "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act [§ 1226] and part 236 of title 8, Code of Federal Regulations"). None of the documents from DHS reference § 1225(b). Accordingly, the Court cannot credit Respondents' argument that § 1225(b) can serve as a new basis for Petitioner's detention, which Respondents raised post hoc and introduced for the first time in this litigation. *See Gomes v. Hyde*, 804 F. Supp. 3d 265, 268 (D. Mass. 2025) ("Because Gomes was arrested on a warrant and ordered detained under Section 1226, his detention continues to be governed by Section 1226(a)'s discretionary framework."); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485–86 (S.D.N.Y. 2025) (holding that a person placed in full removal proceedings under § 1226 cannot thereafter be detained under § 1225). Having elected to proceed with full removal proceedings under § 1226, Respondents cannot now reverse course and institute § 1225 expedited removal proceedings.

Accordingly, based on the Ninth Circuit's decision in *Rodriguez Vazquez* and the record evidence, the Court finds that Petitioner is subject to § 1226, rather than mandatory detention under

§ 1225.  In this context, the Government's election to place Petitioner in full removal proceedings under § 1229a and then release her under § 1226(a) provided Petitioner with a liberty interest that is protected by the Due Process Clause.  *See, e.g., Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too do[] [noncitizens] have a liberty interest in remaining out of custody on bond."); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) ("Thus, even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody."); *Diaz v. Kaiser*, No. 25-CV-05071, 2025 WL 1676854, at \*2 (N.D. Cal. June 14, 2025) ("[I]ndividuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond.").

The Court is not persuaded by the cases that Respondents cite to argue otherwise.  *See* Opp. at 9–10; Return at 2–3.  With one exception, the cases Respondents cite are factually distinguishable because the noncitizen was not released from custody pursuant to § 1226.  *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020); *Altamirano Ramos v. Lyons*, 809 F. Supp. 3d 1015, 1024 (C.D. Cal. 2025); *Chavez v. Noem*, 801 F. Supp. 3d 1133, 1136–37 (S.D. Cal. 2025); *Valencia v. Chestnut*, 809 F. Supp. 3d 1064, 1065 (E.D. Cal. 2025); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 500 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1132 (8th Cir. 2026).  Respondents' only factually similar case is *Weng v. Genalo*, No. 25-cv-9595, 2026 WL 194248, at \*7 (S.D.N.Y. Jan. 25, 2026), which the Court declines to follow because it is inconsistent with *Rodriguez Vazquez* and the weight of authority in this Circuit.

Thus, Petitioner obtained a cognizable liberty interest when the Government released her on her own recognizance under § 1226(a).  *See Zadvydas*, 533 U.S. at 693 ("But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.").  Because Petitioner has a protected liberty interest, the Court next considers whether Petitioner's re-arrest without a pre-detention hearing violated her due process rights.

### ii.    Procedural Due Process

Petitioner argues that Respondents violated her procedural due process rights by depriving her of the opportunity to contest her arrest and detention before a neutral decisionmaker.  Mot. at 9–13.  Petitioner argues that she has "established a protected liberty interest," and that the three-factor test established in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) weighs heavily in favor of granting the sought-after injunctive relief.  *Id.* at 10-12.

In their return, Respondents "incorporate by reference[] the legal arguments . . . presented in opposition to Petitioner's motion for preliminary injunction" but do not otherwise expressly respond to Petitioner's argument.  Return at 4.  In their opposition, Respondents previously argued that the *Mathews* factors do not apply because the Supreme Court has never applied them "in addressing due process claims raised by noncitizens held in civil immigration detention."  Opp. at 9 (citing *Mathews*, 424 U.S. at 335 and *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022)).  Respondents further argued that Petitioner is subject to expedited removal and she "cannot assert a protected property or liberty interest in additional procedures not provided by the statute." *Id.* at 10.

In *Mathews*, the Supreme Court explained that "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment."  *Mathews*, 424 U.S. at 332.  The Supreme Court set out three factors relevant to the due process inquiry: "the private interest that will be affected by the official action," "the risk of an erroneous deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards," and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  *Id.* at 335.

In *Rodriguez Diaz*, the Ninth Circuit applied the *Mathews* factors to a procedural due process challenge to immigration detention under 8 U.S.C. § 1226(a).  *See* 53 F.4th at 1207–10.  The Ninth Circuit explained that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context."  *Id.* at 1206.  While the Ninth Circuit "assume[d] without deciding" that the *Mathews* factors applied, the Ninth Circuit nonetheless

United States District Court
Northern District of California

8

explained that "other circuits (reaching conflicting outcomes) have applied the *Mathews* test" in due process challenges to § 1226(a). *Id.* at 1206–07 (citing *Miranda v. Garland*, 34 F.4th 338, 358–59 (4th Cir. 2022), *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27–28 (1st Cir. 2021), and *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). The Court notes that other courts in this Circuit regularly apply *Mathews* to due process challenges in the immigration context. *See, e.g., Pinchi*, 792 F. Supp. 3d at 1033–36; *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1046–48 (E.D. Cal. 2025); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1029–33 (N.D. Cal. 2025). Here, on December 6, 2023, the Government placed Petitioner in full removal proceedings under § 1229a and released her on her own recognizance pursuant to § 1226(a). *See* ECF 19-2; ECF 26-2. Petitioner was also arrested on July 24, 2025, by ICE pursuant to a Warrant for Arrest (Form I-200) under § 1226(a). Auer Decl. ¶¶ 11–12; ECF 19-4 at 4; ECF 19-5. Thus, the Court joins other courts in the Ninth Circuit and applies the *Mathews* factors to determine the constitutionally sufficient procedures to protect Petitioner's liberty interest. Although Respondents choose to ignore their own election to place Petitioner into full removal proceedings, including all the rights obtained under § 1226, this Court finds that § 1225 simply does not apply in this case based on the Respondents' own actions.

As to the first *Mathews* factor, the Court finds that Petitioner has a substantial private interest in remaining out of immigration custody because she has been released pending civil removal proceedings. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Petitioner, who has serious medical conditions, has an interest in remaining in her home, being with her family members, and monitoring her medical conditions out of immigration custody. *See Diaz*, 2025 WL 1676854, at *3 (holding that petitioner had a substantial private interest in remaining out of immigration custody for him to work, live at home, and be with family and friends to "form the enduring attachments of normal life" (citation omitted)).

As to the second *Mathews* factor, the Court finds that there is a risk of erroneous deprivation that the additional procedural safeguard of a pre-detention hearing would help protect against. Here, neither Petitioner nor Respondents had an opportunity to determine whether any valid basis exists for her detention because Petitioner has not received any bond or custody hearing. *See Singh*, 803 F. Supp. 3d at 1047. Additionally, because Petitioner's substantial liberty interest is at stake, due

United States District Court
Northern District of California

process also requires Respondents to prove "by clear and convincing evidence that [Petitioner] is a flight risk or danger to the community" before depriving her of that liberty. *Id.* at 1048. Here, Respondents have not shown any evidence that Petitioner is a flight risk or a danger to the community. Indeed, after Petitioner was released from immigration custody in December 2023, she attended her master calendar hearing with the San Francisco Immigration Court 18 months later in July 2025. *See* ECF 19-1 at 4; ECF 19-2; Declaration of Erin E. Meyer ¶ 4, ECF No. 3-1 ("Meyer Decl."). Thus, the Court finds that this factor favors Petitioner.

As to the third *Mathews* factor, Petitioner has no criminal record and diligently attended the required hearing in immigration court after DHS released her on her own recognizance in December 2023. *See* Ramirez Clavijo Decl. ¶ 5; ECF 19-1 at 4; ECF 19-2; Meyer Decl. ¶ 4. Since December 2023, Petitioner has lived with her brother in Sunnyvale, California and has worked to build a stable life in the San Francisco Bay Area. *See* Ramirez Clavijo Decl. ¶ 4. The Court notes that Respondents do not claim any change in material circumstances that would warrant reassessment of Petitioner's flight risk or danger to the community. Thus, the Court finds that Respondents' interest in detaining Plaintiff without a hearing is low.

Having determined that each of the *Mathews* factors favor Petitioner, the Court concludes that if the Government wishes to re-detain Petitioner, it must provide her with the pre-detention hearing before a neutral decisionmaker as required by due process. She may be detained only if the Government proves by clear and convincing evidence at such a hearing that she poses a flight risk or danger to the community. *See Rodriguez Diaz*, 53 F.4th at 1199 (summarizing Ninth Circuit opinions—and calling them into question on separate grounds—holding that due process requires that the government bear the burden of proving, by clear and convincing evidence, that a noncitizen poses a risk of flight or dangerousness before she can be detained).

### iii.    Substantive Due Process

Petitioner also brings a substantive due process challenge to her detention. Mot. at 7–9. Petitioner argues that there is no credible argument that she is a danger to the community, or that she has a flight risk. *Id.* at 8–9. The Court notes that Respondents do not make any arguments to the contrary. *See generally* Return; Opp. Because the procedural due process issue is dispositive,

United States District Court
Northern District of California

the Court need not address the substantive due process claim.  *See Llanes Tellez v. Bondi*, 826 F. Supp. 3d 1141, 1148 (N.D. Cal. 2025).

### B.    Other Claims

Petitioner also asserts claims for unlawful arrest under the Fourth Amendment, violation of the Administrative Procedure Act, and violation of the right to access courts and petition for redress under the First and Fifth Amendments.  *See* Pet. ¶¶ 77–98.  Because the procedural due process issue is dispositive, and neither party addresses these claims in their briefs, the Court need not reach them.

### C.    The Impact of a Final Order of Removal

The Government contends that any relief granted by the Government must allow Petitioner's re-detention upon a final order of removal.  Return at 4–5.  Petitioner responds that she "does not seek an order that would change the parties' rights and obligations following a final removal order" and instead "expressly requests an '[o]rder that Respondents may not place Petitioner in expedited removal proceedings or remove Petitioner except based on a final, executable removal order issued through Section 240 removal proceedings.'"  Traverse at 5. Accordingly, all agree that detention during a 90-day "removal period" after the entry of a final order of removal is mandatory.  8 U.S.C. § 1231(a)(1)-(2).  After this period expires, ICE has discretion to continue detaining the noncitizen or to release pending removal.  8 U.S.C. § 1231(a)(6).  In *Zadvydas v. Davis*, the Supreme Court held that § 1231(a)(6) did not authorize the Government to indefinitely detain a removable noncitizen.  *See* 533 U.S. at 689.  A detention period of less than six months is presumptively reasonable.  *See id.* at 701.  For detention to continue beyond six months, "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*  Thus, if Petitioner becomes subject to a final order of removal, the Government may detain her for the sole purpose of executing removal.  In this event, Respondents must provide a bond hearing in the timeframe required by law.

## IV.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

    a.   The petition for writ of habeas corpus is GRANTED.

    b.   Respondents are PERMANENTLY ENJOINED AND RESTRAINED from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that Petitioner is a flight risk or danger to the community such that her physical custody is legally justified.

    c.   If Petitioner becomes subject to a final order of removal and Petitioner receives notice of such order, Respondents may detain Petitioner for the sole and limited purpose of executing removal pursuant to 8 U.S.C. 1231(a)(2)(A).  In such an event, Respondents SHALL provide a bond hearing in the timeframe required by law.

    d.   The Clerk of the Court SHALL close the case.

Dated:  July 31, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

12